**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SULACO ENTERPRISES LLC, | ) |
| | ) Case No. 2:26-cv- |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| IMPERVA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sulaco Enterprises LLC ("Sulaco" or "Plaintiff") for its Complaint against Defendant Imperva, Inc. ("Imperva" or "Defendant") for patent infringement alleges as follows:

**THE PARTIES**

1.      Sulaco is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Suite 170, Marshall, TX 75670.

2.      Upon information and belief, Imperva is a corporation organized under the laws of California, with a regular and established place of business in this Judicial District at 6900 Dallas Parkway, Plano, Texas 75024. Upon information and belief, Imperva may be served through its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701. Upon information and belief, Imperva does business in Texas and in the Eastern District of Texas, directly or through intermediaries.



**Plano, TX**

**Office**

6900 Dallas Parkway
Plano, Texas 75024, USA

+1 469 731 2552

[1]

## JURISDICTION

3.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.    This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint, alleged more particularly below.

5.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because Defendant is subject to personal jurisdiction in this Judicial District, has committed

---

[1] https://www.imperva.com/company/locations-map/ (last accessed April 27, 2026).

acts of patent infringement in this Judicial District, and has a regular and established place of business in this Judicial District. Defendant, through its own acts, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one. Furthermore, upon information and belief, Defendant has previously either admitted or not contested venue in this Judicial District. *See, e.g., DataCloud Techs., LLC v. Palo Alto Networks, Inc.*, Case No. 2:24-cv-00482-JRG-RSP, Dkt. 17 (E.D. Tex. Sep. 3, 2024) (Imperva's answer in consolidated matter).

**PATENT-IN-SUIT**

6.      On March 24, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,990,942 (the "'942 Patent") entitled "Method and Systems for API-Level Intrusion Detection". A true and correct copy of the '942 Patent is attached hereto as Exhibit A.

7.      Sulaco is the sole and exclusive owner of all right, title, and interest in the '942 Patent (the "Patent-in-Suit") and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. Sulaco also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

8.      Sulaco has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patent-in-Suit. Upon information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

**FACTUAL ALLEGATIONS**

9.      The '942 Patent generally relates to API-level intrusion detection for monitoring and analyzing API calls to detect malicious or unauthorized activity. The technology described in

3

the '942 Patent was developed by inventors Anand Thakadu, Anirban Bhattacharya, Kuldip Shetty, Krishna Prasad Muraleedharan Pillai, Ravi Udaya Kumble, Sourav Bhattacharya, Venu Aluri, and Vitesh Patel. By way of example, this technology is implemented in hardware and software products that provide API-level intrusion detection and sandboxing capabilities.

10.     Defendant has infringed and continues to infringe the Patent-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patent-in-Suit.

## COUNT I
### (Infringement of the '942 Patent)

11.     Paragraphs 1 through 10 are incorporated by reference as if fully set forth herein.

12.     Sulaco has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, or import any products that embody the inventions of the '942 Patent.

13.     Defendant has and continues to directly infringe the '942 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '942 Patent. Such products include but are not limited to Runtime Application Self-Protection (RASP), Imperva Cloud Based Web Application Firewalls Solutions, Imperva on Premise and Virtual Appliance Web Application Firewall Solutions, Imperva CDN, Imperva Advanced Bot Management, and Imperva Malware Sandboxing Solutions.

14.     For example, Defendant has and continues to directly infringe at least Claim 22 of the '942 Patent by making, using, offering to sell, selling, and/or importing into the United States products that provide API-level intrusion detection and sandboxing capabilities. For example, the Imperva WAF performs an application programming interface (API)-level intrusion detection

4

method. The Imperva WAF performs the step of receiving an API call for a service at an API sandbox module. The Imperva WAF performs the step of parsing the API call to extract at least one of: an API call name; or one or more API call parameters.

## Secure your critical applications

Imperva deploys an integrated defense-in-depth model which provides a layered approach to enforcing security from the application to the end user. Through Imperva **Runtime Application Self-Protection (RASP)**, a lightweight agent is incorporated during the software development cycle. An analyst leader in reports like Gartner® Magic Quadrant™, Imperva provides **Web Application Firewalls (WAF)** solutions (cloud-based Cloud WAF and on-premises or virtual appliance WAF Gateway) to defend against all OWASP Top 10 threats including SQL injection, cross-site scripting, illegal resource access, and remote file inclusion. Inspection and enforcement of user traffic occurs across Imperva's global network of PoPs, each also a DDoS scrubbing center. Policies and signatures are kept up-to-date for your WAF and **API Security** based on live, crowdsourced intelligence and from security experts at Imperva Research Labs. Imperva API Security provides continuous protection of all APIs using deep discovery and classification to detect all public, private and shadow APIs. It also protects against business logic attacks and many more of the OWASP API Top Ten. The easy-to-deploy solution empowers security teams to implement a positive API security model.

15.    The Imperva WAF performs the step of generating a copy of the at least one of: the API call name or the one or more API call parameters. The Imperva WAF performs the step of providing, to an intrusion detection rules execution engine including one or more hardware processors, the copy of the at least one of: the API call name or the one or more API call

---

[2] Imperva Application Security Datasheet, at pg. 1. Available at:
https://www.imperva.com/resources/datasheets/Imperva-Application-Security.pdf

parameters. The Imperva WAF performs the step of determining, via the intrusion detection rules execution engine, whether the API call is in violation of one or more security rules obtained from a security rules object.  The Imperva WAF performs the step of providing an indication of whether the API call is in violation of the one or more security rules.

16.    The Imperva WAF uses an API sandbox module co-located at an enterprise software gateway and performs the step of receiving API calls for user selected developers and user selected API name references and performs the step of processing the received API calls for application specific intrusion detection.

---

[3] Imperva Application Security Datasheet, at pg. 2. Available at:
https://www.imperva.com/resources/datasheets/Imperva-Application-Security.pdf

## Configuration rollout / sandbox

Configuration, very much like a software, may impact the functionality and hence configuration changes introduce risks too. We separate configuration into two types using a different mitigation methodology for each type:

**Global configuration:** These are configuration settings that are applied to all of our customers' accounts. For example, out-of-the-box WAF security rules that help protect all of our customer websites. Such configuration updates are extensively tested before being applied to production (see the Software Quality Assurance section below). The change is rolled out like a software update, gradually through our entire network.

**Customer-specific configuration:** Our customers may tune their own configuration via GUI or via APIs. In both cases the

9    Service Availability and Reliability - Business Continuity                    imperva.com

management application is designed to verify that the configuration entered (e.g., custom security rule) is valid and only then publishes the configuration to  the PoPs.

Customer-specific configuration is written to different configuration files which only impacts the customer making the change and not the entire customer base. We deliver such changes to all PoPs within a few seconds, as the customer expects the changes to be applied without delay. As a result, we don't have time to do a slow graceful rollout as we do with global configuration. [4]

17.    Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Imperva has used the Accused Products in a manner that directly infringes at least Claim 22 of the '942 Patent.

18.    Defendant has and continues to indirectly infringe one or more claims of the '942 Patent by knowingly and intentionally inducing others, including Imperva customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

19.    Defendant, with knowledge that these products, or the use thereof, infringe the '942

---

[4] Imperva Business Continuity: Service Availability and Reliability: Imperva Cloud Security Solutions, at pgs. 9-10. Available at: https://www.imperva.com/resources/datasheets/Service-Availability-and-Reliability-Imperva-Cloud-Security-Solutions.pdf

Patent at least as of the date of this Complaint, has knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '942 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendant has adopted a policy of not reviewing the patents of others, and instructing its officers, agents, and employees to not review the patents of others, including specifically those related to Defendant's specific industry, thereby remaining willfully blind to the Patent-in-Suit at least as early as the issuance of the Patent-in-Suit.

20.     Defendant has induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '942 Patent, but while remaining willfully blind to the infringement.  Defendant has and continues to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendant's website, product literature and packaging, and other publications.

21.     Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '942 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendant's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '942 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '942 Patent, are not staple articles or commodities of

commerce, have no substantial non-infringing uses, and are known by Defendant to be specially made or adapted for use in the infringement of the '942 Patent. Defendant performs these affirmative acts with knowledge of the '942 Patent and with intent, or willful blindness, that they cause the direct infringement of the '942 Patent.

22.    Sulaco has suffered damages as a result of Defendant's direct and indirect infringement of the '942 Patent in an amount to be proven at trial.

23.    Sulaco has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '942 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Sulaco prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patent-in-Suit;

b.    An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patent-in-Suit;

c.    An order awarding damages sufficient to compensate Sulaco for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.    Entry of judgment declaring that this case is exceptional and awarding Sulaco its costs and reasonable attorney fees under 35 U.S.C. § 285; and

9

e.      Such other and further relief as the Court deems just and proper.

Dated:  April 29, 2026                          Respectfully submitted,

*/s/ Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

*ATTORNEYS FOR PLAINTIFF,*
*SULACO ENTERPRISES LLC*